**FILED**
2006 Jan-17  AM 08:35
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### Northwestern Division

| | |
|---|---|
| **NATIONAL PARKS CONSERVATION** ) | |
| **ASSOCIATION, INC. and** ) | |
| **SIERRA CLUB,** ) | |
| ) | |
| **Plaintiffs** ) | |
| **v.** ) | **Civil Action No.-01-403-VEH** |
| ) | |
| **TENNESSEE VALLEY AUTHORITY** ) | |
| ) | |
| **Defendant.** ) | |

---

### MEMORANDUM OPINION

Plaintiffs National Parks Conservation Association, Inc. ("NPCA") and Sierra Club, Inc. ("Sierra Club")[1] have filed an action under the citizen suit provision of the Clean Air Act ("CAA" "the Act"), 42 U.S.C. § 7604(a) (2000)which, in three (3) separate Causes of Action, asserts Tennessee Valley Authority ("TVA") violated the CAA by its 1982 work at the Colbert Unit 5 plant ("the work"). NPCA says the work constituted a "modification" under the CAA, triggering the New Source Performance Standards ("NSPS"), Non-Attainment New Source Review ("NNSR") and New Source Review ("NSR")[2], and Prevention of Significant Deterioration ("PSD")

---

[1] The court will continue its practice of referring to the Plaintiffs collectively as "NPCA" unless the context clearly indicates otherwise.

[2] In 1982 and 1983, the area around Colbert 5 was a "non-attainment" area. The parties agree, and prior orders in this action have stated, that the area around Colbert 5 has been an

standards of the CAA. Second Amended Complaint ("SAC"). (Doc. 80.)

In the latter part of 2005, the court, acting on TVA motions that had been pending for some time, entered orders on motions to dismiss filed by TVA where TVA sought judgment on all three (3) NPCA Causes of Action. *See* Doc. 213 and Doc. 215 (First and Second Causes of Action); Doc. 217 (Third Cause of Action).

On January 3, 2006, (doc. 220), the court ruled on a Motion (doc. 218) filed by NPCA requesting a "brief telephonic status conference," and the Response thereto (doc. 219) filed by the Tennessee Valley Authority ("TVA"). The court granted the motion in part by directing NPCA "to provide to the court and to TVA a proposed agenda of matters to be addressed," and directing TVA to file a response to NPCA's proposed agenda. (Doc. 220) NPCA filed its Proposed Agenda. (Doc. 221). TVA filed its Response (doc. 222), to which NPCA filed a Reply (doc. 223).

The court anticipated NPCA might, as part of the status conference, seek reconsideration of the orders entered on TVA's motions to dismiss described above. And NPCA did so in part. NPCA's discussion of the agenda, however, addressed the Court's announced intention to consolidate this action with the court's other TVA Colbert plant CAA citizen suit action *Sierra Club v. TVA*, 430 F.3d 1337 (11th Cir.

---

attainment area since the early 1990's. So, if the relevant time is, or turns out to be, 1982 - 1983, the NNSR provisions would apply; if the relevant time is the five (5) years preceding the filing of the Complaint, NSR provisions would govern.

2005), *Petition for Rehearing Or Rehearing En Banc* filed January 5, 2005 ("*Sierra Club v. TVA")*. In response to that announcement, NPCA said:

> , . . . in light of the Court's recent rulings that appear to have effectively dismissed all counts in the NSR case. If this is correct and no claims for injunctive relief in the NSR case alone have survived, then there is no case with which to consolidate the opacity case, and the plaintiffs would ask the court to enter judgment for the defendant forthwith.

Doc. 221 at p. 2.

In its response, TVA concurred with NPCA's assessment:

> TVA agrees with the Plaintiffs that the Court's orders have, as Plaintiffs put it, "effectively dismissed all counts in the NSR case."

Doc. 222 at p.1.

I have reviewed and considered what NPCA and TVA have said is the effect of the Orders in question (docs. 213, 215, and 217), and, having done so, concluded that their assessment is correct. After setting out the background, followed by discussion of what issues arguably may have remained after those Orders, I conclude that there are no issues left to resolve and that the entry of a final Order dismissing the action is appropriate.

## I. **BACKGROUND**

The background of this action, the CAA, the regulatory history, and the court interpretations of the applicable provisions have been set out in previous opinions

3

associated with docs. 213, 215, and 217, and will not be repeated. Suffice it to say that the requirements of the Alabama PSD and NNSR provisions are triggered when a new source is built or when an existing major stationary source constructs a "major modification." *See* AAPCC Regulations 16.4.8 (Ex. 5 at 10) & 16.3.2(c) (Ex. 6 at 16-8). If triggered, these new source requirements require installation of pollution control equipment that represents best available control technology (BACT) (under the PSD program) or lowest achievable emission rate (LAER) (under the NNSR program). NPCA says these requirements were triggered by the 1982 - 1983 work at Colbert 5.

## II. <u>ARE THERE ISSUES REMAINING AT THIS TIME</u>?

In asking for the agenda for the proposed status conference, I did not consider the cumulative effect of the recent Orders. (Docs. 213, 215, and 217). I also did not anticipate: 1) that there would still be any doubt concerning what claims remained in the action after the orders entered on the TVA motions to dismiss, and 2) that the parties would, for different reasons, seek entry of judgment in TVA's favor on all claims.

Having considered the effect of the Orders, I cannot quarrel with NPCA's belief that, under the First and Second Causes of action, it has no claims for relief unless " . . . the modifications occurred within five years of the filing of the

4

complaint." Doc. 223 at p. 2. The court tried, unsuccessfully, in the Order entered December 8, 2005, which amended its ruling on the First and Second Causes of Action, to eliminate any possible confusion. *See* Doc. 215, amending Doc. 213. At page 4 of doc. 215, the court said that NPCA would still have claims when those claims fell within the five (5) year statute of limitations and asserted that TVA **operations** of Colbert 5 violate the Clean Air Act. (Emphasis supplied).

The court did not intend to say that the operations of Colbert 5 that might violate the Act had to be caused by a "modification" of Colbert 5 occurring within five (5) years of the filing of the Complaint. There is no dispute that the construction work at Colbert 5 which NPCA says was a modification triggering the NSPS, NNSR/NSR, and PSD provisions of the CAA took place in 1982 and 1983. I could have been more clear and said NPCA couldn't prove a claim under the First and Second Causes of Action because there had been no work at Colbert 5 in the five-year period immediately preceding the filing of the Complaint in 2001. My confusion arose from a reading of the SAC as, *inter alia*, asserting that TVA's operations of Colbert 5 violate the CAA, combined with my reading of *Sierra Club v. TVA*, *supra*, which supports that assertion. The distinction between the SAC and *Sierra Club v. TVA*, of course, is that the latter does not tie the illegal operations to the 1982 -1983 work at Colbert 5. NPCA is careful to say that it reads the recent Orders as tying the

5

right to proceed under the First and Second Causes of Action, which assert operation

of Colbert 5 without appropriate permitting and the installation of BACT and LAER

emission limits, to a "modification" under the Act that falls within the (5 year) statute

of limitations. (Doc. 222 at p.2).

In any event, I anticipated that consolidating this action with *Sierra Club v.*

*TVA*, and addressing the issue of remedies, would moot the issue of whether there

were surviving claims since *Sierra Club v TVA* covers substantially the same time

period of operations at the same TVA plant.

## III. DISCUSSION

Perhaps it is a distinction without a difference but, in light of *Sierra Club v.*

*TVA, supra*, the court was willing to at least consider the possibility that NPCA could

prove its First and Second Causes of Action as to TVA's operations of Colbert 5 at

this time and going back five (5) years preceding the filing of the Complaint. The

court said, and reaffirms, that the NPCA Notice letter was a shotgun notice that did

not comply with the notice provisions of the CAA citizen suit provisions, thereby

dooming the Third Cause of Action. Having said that, *Sierra Club v. TVA, supra*,

was handed down **after** the court's Order dismissing the First and Second Causes of

Action, and the court believed, apparently incorrectly, that *Sierra Club v. TVA* **may**

**have** opened the door for NPCA to try to prove such violations occurring within the

6

five (5) years preceding the filing of the Complaint. The thinking was that once the 11th Circuit had stated unequivocally that the 2% *de minimis* rule violated the CAA because it was not approved by the EPA and made a part of the Alabama SIP, NPCA may have sought to prove, if it could, that TVA's operations of Colbert 5 today, and going back to 1996, also violate the CAA because the 1982 - 1983 work, which NPCA says was a "modification" under the Act, was not permitted as the Act requires. An amendment to NPCA's Complaint likely would have been necessary, but since *Sierra Club v. TVA* represents, at the least, a significant intervening change in the law, leave to amend would have been freely granted. F. R. Civ. P. 15.

Put another way, NPCA could send TVA, ADEM, and EPA a pre-suit notice letter tomorrow saying Colbert 5 violates the CAA each time its opacity exceeds 20% as measured by its continuous monitor operating system ("COMS")[3] reading, that it has done so on every occasion listed (using the COMS data supplied to ADEM by TVA), and then file suit sixty (60) days later.

Given my reading of *Sierra Club v. TVA*, any or all of these steps appeared to be a meaningless exercise of formality. *Sierra Club v. TVA* appears to clearly say the

---

[3] "One of the requirements of the Colbert plant's air permits is that TVA install, maintain, and operate a continuous opacity monitoring system ("COMS") in each of the plant's smokestacks. See Ala. Admin. Code r. 335-3-12-.02(3). As its name indicates, COMS is a device that monitors continuously the opacity of a plume of smoke." *Sierra Club v. TVA*, *supra*, 430 F.3d at 1340 -1341.

7

Colbert plant is in violation of the CAA, the 2% *de minimis* rule does not excuse the violations, the COMS readings are credible evidence of the violations, and TVA is immune to civil penalties. If this is an accurate recitation of its holding, *Sierra Club v. TVA* seems to leave very little for me to try in that action besides the remedies to be imposed under the Act. And I had the same thinking about this action, which is why I announced my intention to consolidate them once the mandate issued in *Sierra Club v. TVA*.

Whether I don't get it (it meaning "the CAA"), or the earlier Orders were insufficiently clear[4], is not important. At this point the court has decided that its earlier decision, which was to await issuance of the mandate in *Sierra Club v. TVA*, then consolidate this action with *Sierra Club v. TVA* and address what remedies would be appropriate in light of *Sierra Club v. TVA*, is no longer an efficient manner of proceeding, and may have the unintended consequence of stretching out for years the resolution of the legality of TVA's operations of its Colbert County plant. Further, in light of the parties' statements in the "status conference" filings, docs. 221 - 223, both NPCA and TVA take the position that the effect of the Orders (docs. 213, 215, and 217) is that there is nothing left to do but enter judgment in favor of TVA and leave the parties to their appellate remedies should they be so inclined.

---

[4] Opacity issues apparently are not limited to Colbert 5's smokestacks.

8

I think the parties are correct in their assessment of the status of the file at this point, *i.e.*, that nothing further is left for decision. Further, absent the entry of a final Order, I foresee a scenario where, the *Sierra Club v. TVA* mandate having issued, I proceed as I believe I am directed by that opinion, or any modification thereof, with NPCA then appealing my decisions in this action on the First, Second, and Third Causes of Action to the 11th Circuit.

On appeal, if NPCA is right and I am wrong about the First and Second Causes of Action, then there will be an entirely different remedy question to address, *i.e.*, since TVA should have, but didn't, obtain the appropriate CAA permits in 1982 - 1983, what is to be done about that now? Does TVA have to do over the 1982 - 1983 work in accordance with the 1980 CAA emission rule, the legality of which was litigated at length in the 1980's and 1990's without a final decision on its validity by the D.C. Circuit Court of Appeals[5], or some variation of the 1980 rule in effect in 2001 when this action was filed, or the CAA emission rule in effect at the time I take up the remedies issues on remand in *Sierra Club v. TVA*?[6] I pose the question

_____

[5] *See N.Y v. EPA*, 413 F.3d 3 (D.C. Cir. 2005), rehearing *en banc* denied, ____ F. 3d ____, 2005 WL 3334349 (D.C.Cir., December 9, 2005).

[6] Which would likely be the 2002 rule upheld by the D.C. Circuit in *N.Y. v. EPA*, *supra*, but might not be if the 2002 rule is still in litigation, has not been fully implemented or, to be more precise, not yet been made part of Alabama's State Implementation Plan ("SIP"). The time for seeking *certiorari* in *NY v. EPA* expires ninety (90) days from the December 9, 2005, denial of rehearing *en banc*. Sup. Ct. R. 22.3.

9

because I believe, as TVA has told the 11th Circuit in its Petition for Rehearing, that *Sierra Club v. TVA* has effectively decided the issue of CAA liability and only remedies remain to be determined. *See* Doc. 222, Exhibit A (TVA Petition for Rehearing or Rehearing *En Banc*) at p. 10; Exhibit D (Brief of *Amici Curiae* Alabama Pulp and Paper Council and Business Council of Alabama) at p. 4. And if that is correct, how will the conflicting remedies be reconciled?

Further, if NPCA is right and I am wrong about the Third Cause of Action, then NPCA will have the right to prove TVA has violated the Act on a daily basis for more than twenty (20) years.

Further, if NPCA is correct about the viability of its First and Second Causes of Action, there will still remain two legal questions I have determined adversely to NPCA's position:

> 1) Was the work at Colbert 5 subject to the "routine maintenance and repair" ("RMRR") exclusion that applies to projects that are routine within the (electricity generating) industry, by which is meant work of a type performed commonly within that industry, although perhaps infrequently at any specific one or more of any utility's (TVA's here) particular plants; and
>
> 2) Whether emissions increases, for purposes of NSR/PSD analysis, are to be calculated only on the basis of "maximum hourly emission rates," not "annual

---

On December 29, 2005, EPA published a Supplemental Notice of Reconsideration of the 2002 rule seeking comments limited specifically to the cost benefit analysis contained in the proposed rule and the effect of *NY v. EPA* on that part of the rule. *See* 70 FR 77101-01, 2005 WL 3542379 (F.R.).

actual emissions." Maximum hourly emissions must increase before PSD permitting is triggered; greater annual hours of operation, which in turn result in more actual emissions, is irrelevant to the analysis.[7]

Both are pure legal questions.

The first question has not been addressed by any appellate court since *Wisconsin Electric Power Co. v. Reilly ("WEPCO")*, 893 F.2d 901 (7th Cir. 1990), a decision I do not believe the 11th Circuit will follow, at least in part because *WEPCO* relied on the EPA Environmental Appeals Board procedure held unconstitutional by the 11th Circuit in *TVA v. Whitman*, 336 F.3d 1236 (11th Cir. 2003). The 11th Circuit, also in *TVA v. Whitman*, observed, but did not decide, the "central disagreement . . . is whether "routine' should be defined relative to an industrial category or to a particular unit." 278 F.3d 1184, 1189 (n.3) (11th Cir. 2002), *withdrawn in part*, 336 F.3d 1236 (11th Cir. 2003).

The second question was answered adversely (and by that I mean adversely to NPCA's chances of proving TVA's Colbert 5 1982 - 1983 work violated the CAA) by the Fourth Circuit in *U.S. v. Duke Energy*, 411 F. 3d 539 (4th Cir. 2005) *rehearing*

---

[7] This is the holding of *U.S. v. Duke Energy*, 411 F. 3d 539 (4th Cir. 2005) *rehearing denied* _____ F.3d _____ (August 30, 2005), which this court has already indicated it would follow absent appellate guidance on the issue from the 11th Circuit or the Supreme Court. At the time of this writing, a Petition for Writ of *Certiorari* in *Duke Energy* has been filed by the Environmental Defense Fund, *et al*., but the Court has yet to rule on the Petition. Docket No. 05-848, filed December 28, 2005. Duke Energy's response is due February 6, 2005. If the United States has taken a position on the Petition, I have been unable to find it.

*denied,* ____ F.3d ____ (August 30, 2005).

The answers to these issues could be dispositive of NPCA's ability to prove its First and Second Cause of Action claims. They are unlikely to come from the D.C. Circuit, because *NY v. EPA* expressly declined to express an opinion ". . . as to whether Congress intended to require that EPA use identical regulatory definitions of modification across the NSPS and NSR programs. *Cf. United States v. Duke Energy*, No. 04-1763, slip. op. at 11- 19." 413 F.3d 3, 20.[8] The 4th Circuit's use of identical definitions of modification across the NSPS and NSR programs was a critical underpinning of its holding in *Duke Energy.*

Those cases still may not end the matter, because the debate over "increased actual emissions" versus "increased rate of emissions" seems determined to rise up from what I thought was its *NY v. EPA* coffin, *but see* Judge Williams's concurrence in the denial of rehearing, *supra*, 2005 WL 3334349 (D.C.Cir., December 9, 2005). Absent the Supreme Court's granting *certiorari* in either *NY v. EPA* or *U.S. v. Duke Energy*, if there is to be further guidance on these issues, it appears it will have to come from the 11th Circuit.

Finally, if NPCA is right and I am wrong about the Third Cause of Action, then NPCA will have the right to prove that TVA has violated the Act on a daily basis for

---

[8] The 1980 Rule was, technically, not before the Court in *NY v. EPA*.

12

more than twenty (20) years.

I think it can be said with reasonable certainty that these issues will not, at the end of the day, be decided by me. And, if any of the cases on my docket are so related and intertwined that it would be appropriate for them to be reviewed on appeal at or around the same time, it is this action and *Sierra Club v. TVA*. There is an identity of parties (NPCA not being a plaintiff in *Sierra Club v. TVA* is insignificant since Sierra Club is a plaintiff in both actions), the same TVA generating plant (Colbert) is involved in both actions, and the question for decision is the same: what are the CAA violations at TVA's Colbert plant that these plaintiffs will be permitted to attempt to prove, and, if the plaintiffs are successful, what are the appropriate remedies available for those violations?

And, while it may be irrelevant, I note that TVA operates in Tennessee, which is like Alabama in that it has adopted the 2% *de minimis* rule as a state regulation, but not as part of its SIP. *See National Parks Conservation Ass'n v. Tennessee Valley Authority*, 175 F.Supp.2d 1071 (E.D. Tenn. 2001). NPCA did not appeal the dismissal of that case, which rested on the 2% *de minimis* rule. And the 11th Circuit is well aware of Tennessee's 2% *de minimis* rule, because *National Parks Conservation Ass'n v. Tennessee Valley Authority* was cited and discussed in the summary judgment opinion that was reversed in part by *Sierra Club v. TVA*. Having

13

said that, Tennessee is in the 6th, not the 11th, Circuit, and the effect, if any, of *National Parks Conservation Ass'n v. TVA* is reserved to the court(s) in Tennessee.

Similarly, while TVA supplies electricity to Georgia, which is in the 11th Circuit, TVA does not have any generating plants there. Georgia has a 40%, not 20%, opacity limit as part of its SIP. In a case decided after my entry of summary judgment in *Sierra Club v. TVA*, the Northern District of Georgia approved the use of COMS (referred to as "CEM" and "COM") in a CAA citizen suit to prove violations of the Georgia 40% opacity limit. *Sierra Club v. Georgia Power Co.*, 365 F.Supp.2d 1297 (N.D. Ga. 2004) ("*Georgia Power*"). In its ruling, the *Georgia Power* court granted summary judgment to Sierra Club on thousands of violations of the CAA occurring at older coal-fired units at Georgia Power's Wansley plant, and set the matter for trial on remedies only. There is no mention of a 2% *de minimis* rule in *Georgia Power*, and there is no reported citation of *Georgia Power* after the December, 2004 Order described above.

For these reasons, and the reasons stated in the previous Orders on the First, Second, and Third Causes of Action (docs. 213, 215 and 217), I find that there are no remaining issues before the court and that a final Order dismissing the action is due

14

to be entered.[9]

      A separate Order will issue.

      **DONE** this 17th day of January, 2006.

**VIRGINIA EMERSON HOPKINS**
United States District Judge

---

    [9] Should the Orders in Doc.'s 213, 215, and 217 be reversed or modified, I would on remand, if it were still relevant, entertain a motion by NPCA to alter or amend the applicable judgment so as to permit NPCA to amend its Complaint to conform to the law of the case as stated by the 11th Circuit, should such an amendment be required to proceed.